IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JIMMY STANTON                          )
                                       )
        Plaintiff,                     )
                                       )
vs.                                    )        CIVIL ACTION NO. 1:17-cv-102-TFM-N
                                       )
JEFFERSON DUNN, *et al.*,              )
                                       )
        Defendants.                    )

## MEMORANDUM OPINION AND ORDER

Plaintiff Jimmy Stanton, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983.  This matter is before the Court on Defendants' respective Answers and Special Reports which the Court converted to motions for summary judgment.[1]  *See* Docs. 101, 120.

For the reasons discussed herein, it is ordered that this motion be **GRANTED in part** and **DENIED in part**.

### I.  BACKGROUND AND FACTUAL ALLEGATIONS[2]

**A.    Complaint.**

Plaintiff Stanton alleges that members of the Alabama Department of Corrections Emergency Response Team ("CERT Team") used excessive force against him on November 9,

---

[1]    The Special Reports converted were Docs. 13, 15, 18, 22, 33, 34, 40, 41, 60, 61, 64, 65, 87, 88, 92, 98, 99, 116, 117.  *See* Doc. 101, dated November 14, 2019; Doc. 120 dated January 7, 2020. Defendants Michal Harrison and Mallorie Mixon have not yet filed their Answer and Special Report.  Their motion for extension of time (Doc. 134) remains pending before the Court.

[2]    The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." <u>Priester v. City of Riveria Beach</u>, 208 F.3d 919, 925 n.3 (11th Cir. 2000).

2016,[3] when the CERT team entered B-Dorm at approximately 6:30 a.m. and immediately began assaulting and harassing inmates.[4] (Doc. 1 at 5). In his complaint, Stanton specifically details:

> I was handcuffed almost immediately with zipties that instantly cut off my circulation to my hand and I was then snatched out of my bed and made to stand beside two C.E.R.T. members and slapped by a third, who was told by another officer to do so and to throw me on the floor, in front of my bed with numerous other inmates bunched together tightly. They then actually stepped on and walked back and forth on top of our backs as though we were a carpet rug, saying, "youll aint shit without your homeboys". Then after a long time I was picked up, and placed on top of another inmate in a homosexual position as C.E.R.T. members watched & laughed at the degrading spectacle as we refrained from saying anything about it, afraid we would be beat further. Then I was placed in the shower from having pissed on myself in my wheelchair.

(Doc. 1 at 6) (alterations in capitalization).

Plaintiff Stanton alleges that the force used on November 9, 2016 was precipitated by an incident that occurred on November 7, 2016. According to Stanton, on November 7, 2016, members of the CERT Team, as well as other correctional officers, entered B-Dorm to conduct an institutional count of the inmates. (Doc. 1 at 5). On that date, inmates had placed "makeshift tents" on their beds to "gain some space from the inmate he shares the 5'x 6' living area with", and officers ordered inmates to remove the tents. (Id.). Stanton claims while the inmates removed the tents, one of the CERT Team members "aggressively" broke a stick from inmate Quandarian Faulkner's bed which "resulted in a reaction from the C.E.R.T. Members, Correctional Officers present and

---

[3] The Court will refer to the incident subject of this complaint as both the November 9, 2016 incident and the Nov. 9 incident.

[4] Stanton claims the CERT Team made "statements like: 'Where the GD's, Crips and Bloods at now', 'Aryan Brotherhood and Nations where yall at', 'on C.E.R.T. We will beat your Ass', Yall Bitches and Fuck Niggers stood up the other day Standup now' . . . 'Yall stabbed Warden Davenport and Killed Officer Bettis, pull something out now on C.E.R.T. we will beat your Ass.'" (Doc. 1 at 5-6).

the Inmates, after a brief stillness, the count was conducted and the C.E.R.T. Team Members and Count Team exited the dorm." (Id.). Stanton explains:

> Approximately two days later on November 9, 2016, at approximately 6:30 a.m. over 50 members of the Alabama Department of Corrections C.E.R.T. Team, entered Bravo Unit armed with their Riot Gear (helmets with face shields, neck collar, body vest, shields, while at least One-Hundred (100) of the One-Hundred and Fourteen (114), inmates assigned to Bravo Unit was sound asleep, and immediately assaulted the inmates like they were animals, without provocation, because the majority of the inmates were harmlessly asleep, after about 35 to 45 minutes of assaulting the inmates, the C.E.R.T. Team members, placed plastic restraining tyes[sic] on the inmates to lay face down on their beds while other C.E.R.T. Team members was parading up and down Bravo Unit still assaulting and harassing the inmates. . . .

(Doc. 1 at 5) (alterations in capitalization). He further alleges that "Head Warden Cynthia Stewart came to the front of B Unit and said, "I did what had to be done, to teach youll[sic] a lesson." (Id. 1 at 6).

Plaintiff Stanton is suing Defendants[5] for multiple constitutional violations, including excessive force, assault and battery, failure to protect or intervene, and denial of medical care. Stanton seeks $200,000 against each "liable Defendants; Compensatory, Punitive, Declaratory and

---

[5] Stanton originally named as defendants in this action, Alabama Department of Corrections Emergency Response Team, Nurse 1, Nurse 2, Nurse 3, Nurse 4, and Cubicle Officer assigned to Cubicle 1. (Doc. 1). "As a general matter, fictitious party pleading is not permitted in federal court." Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010); see also CSX Transp., Inc. v. United Transp. Union, 236 F. App'x 562, 563 n.1 (11th Cir. 2007) ("the Federal Rules do not authorize suit against fictitious parties"), cert. denied, 552 U.S. 1243, 128 S. Ct. 1475, 170 L. Ed. 2d 297 (2008); Featherstone v. Home Oil Co., 2011 U.S. Dist. LEXIS 139102, 2011 WL 5978774, at *1 n.4 (S.D. Ala. Nov. 8, 2011) (subject to a limited exception, "fictitious party practice is not permitted in federal court"). Accordingly, these defendants were terminated from the suit on April 20, 2017.

Additionally, Defendant Officer Akeem Edwards was terminated from this suit on March 6, 2019, and is not a party to this action. (Doc. 75).

Injunctive Relief; Trial by Jury; State Law Claims of Assault & Battery; Slander; Harassment and such other relief as the Law and this Court Deem just." (Doc. 1 at 17).

**B.    Defendants' Answers and Special Reports.**

The defendants have answered the suit denying in full the allegations against them and filed special reports in support of their positions.[6] (Docs. 13, 15, 18, 22, 33, 34, 40, 41, 60, 61, 64, 65, 87, 88, 98, 92, 99, 116, 117, 125). As part of their special report, Defendants have submitted pertinent prison documents which include the November 9, 2016 Incident Report, Use of Force Report, Duty Officer Report, I&I Investigative Report, disciplinary records, medical records, and defendant officers' affidavits. (Doc. 34).

The submitted Incident Report provides details of the Nov. 9 search, as well as facts leading to the incident, stating:

> On November 7, 2016, the Southern CERT members entered B-Dormitory and ordered all inmates to remove sticks and tied up blankets from their beds. The inmates refused to comply and became very hostile and aggressive toward the CERT members. The inmates gathered in a threatening and intimidating manner around the CERT members stating, "This is 2016, and we run this, slavery is over with, we already done killed one of y'all." Several unidentified inmates were observed with handmade knives in their possession. The CERT members were able to exit the dormitory without incident. The inmates with handmade knives were later identified by the CERT members through IMAS. On November 9, 2016, at approximately 6:35 a.m., the North Central, South Central, and Southern Team CERT Teams entered B-Dormitory to arrest the suspects. . . . All inmates were given orders to report to their assigned beds, lie down, and place their hands behind their back. The following inmates failed to comply with the orders given: . . . Jimmy Stanton B/157689 . . . . The CERT Team used force to include impact weapons and physical force on the above mentioned inmates to get them to comply with the orders given . . . . The inmates were arrested and escorted to the health care unit for medical assessments. . . .

---

[6]    Defendant Mallorie Mixon was served with this suit, through her counsel, on January 9, 2020, but has not yet answered. (Doc. 121, 121). Defendant Michael Harrison has been served with this suit and filed an answer (doc. 125); however, he has yet to submit a special report. (Doc. 126). Accordingly, Defendants Mixon and Harrison are not parties to this motion.

(Doc. 34 at 31). The CERT Team's Nov. 9 search resulted in the confiscation of thirty (30) handmade knives and eleven (11) inmates were charged with failure to obey a direct order of an ADOC employee and allowed to remain in population pending the disciplinary action, while twenty-one (21) inmates, were transferred to segregation pending disciplinary actions for failing to obey a direct order, gathering in a threatening or intimidating manner, and unauthorized possession of a weapon or device that could be used as a weapon (as these inmates were identified as participants in the Nov. 7 incident). (Id. at 32).

Defendants acknowledge that Stanton was not a suspect in the November 7 incident and contend that no force was used against Stanton on November 9. (Doc. 34 at 6). Defendants claim:

> On November 9th, once entry was made inside of B-dormitory, all inmates were given orders to lie down on their assigned beds and to place their hand behind their backs. Inmate Jimmy Stanton refused the orders given and remained seated in his wheelchair. He, in fact, made no attempt to get on his bed. Inmate Stanton was not a suspect and was never implicated in the incident that took place on Monday November 7, 2016. Disciplinary action was later initiated against inmate Stanton for Failure to obey a direct order of an ADOC employee. Inmate Stanton was allowed to remain in population dormitory B without further incident. At no time was any type of force used against inmate Stanton by any member of the CERT team.

(Doc. 34 at 10). Defendants specifically deny that Stanton was "snatched out of his bed" as alleged, nor made to stand by two CERT team members, nor slapped by a third CERT team member, nor placed on the floor or thrown to the floor, nor did CERT team members walk on his back, nor place him on top of other inmates in a homosexual position and watch and laugh. (Doc. 34 at 5). Defendants further deny that Stanton was placed in the shower from having urinated on himself and state Stanton "did not get close to the shower". (Id. 6).

In clarifying the discrepancy in Defendants' denial of use of force and the Incident Report's inclusion of Stanton as an inmates on whom force was used, Defendant Warden Streeter, who compiled the Nov. 9 Incident Report, explains that Stanton was capable of walking (with the

assistance of a walker), yet he refused the orders given to lie on his bed and remained seated in his wheelchair, without making any "effort to move from his wheelchair to his bed." (Doc. 34-29 at 4). All inmates who refused to obey the CERT team's orders to lie on their beds with their hands behind their backs were written up, which Defendant Streeter declares is the only reason Stanton's name was included in the Incident Report. Defendant Streeter affirms that no force was used on Stanton, and "[a]ny indication whatsoever to the contrary was merely inadvertent and poor proofing [of the Incident Report] on [his] part." (Doc. 34-29 at 5). Defendant Warden Streeter also affirms:

> While in B-Dormitory the morning of November 9, 2016, inmate Stanton talked to me and told me that he was glad the CERT team had come in or words to that effect. It appeared that inmate Stanton was trying to make it look like he was working for the Department of Corrections. Inmate Stanton told me that he had been telling staff what was going on in B-Dormitory.

Likewise, the remaining officer defendants declare by personal affidavits that Stanton's claims are "false" and deny that any force was used on Stanton, including handcuffing. Defendants point to the medical records, or lack thereof, as evidence that Stanton was not injured and that force was not used against him as alleged.

The medical defendants have submitted copies of Plaintiff's medical records and deny that they were deliberately indifferent to Plaintiff's medical needs or provided inadequate medical care. (Docs. 15, 22). The medical records confirm that Plaintiff had spinal surgery in July of 2016 and began complaining of left leg numbness and/or an inability to use his left leg in September 2016. (Doc. 15-1 at 41, 44, 47, 58, 127, 137). Following the November 9, 2016 incident, Plaintiff did not submit a complaint, grievance, or sick call request until January 6, 2017. When examined on January 6, 2017, Plaintiff complained of a headache and neck ache, which he contributed to the previous July 2016 surgery, and denied that the cause of the symptoms was from an injury or

trauma. (Doc. 15-1 at 23). Subsequent and similar medical complaints were made thereafter, and Plaintiff consistently denied that the symptoms were related to an injury or trauma, and he received prompt medical care for each request. (Docs. 15 at 3; 22 at 2).

**C.     Plaintiff's Response to Defendants' Special Reports.**

In his response to the Defendants' Special Reports, Stanton challenges that he was an "aggressive and combative suspect in the cell raid incident" as provided by the Incident Report. (Doc. 35 at 2). He claims that he is paralyzed in his left arm, has limited mobility, and is restricted to a wheelchair, yet:

> was forced out of his wheel chair then beaten and stomped in his back, flex cuffed and arrested because he was physically unable to comply with the officer's order.

(Doc. 35 at 2-3). He further claims that although he was escorted to the health care unit after "being beaten", he was denied a medical assessment for complaints "that the flex cuffs cut off his circulation." (Id.). Stanton alleges that subsequent to the Nov. 9 incident, he complained of severe head and neck pain that aggravated his spinal cord injury and points to sick call requests and medical records on or about January 25 and March 30, 2017 for support. (Id. at 3, 8-9).

Stanton insists that paralysis in his left arm negates the need for force to be used against him, asserting that he is incapable of resisting because he cannot move his left arm. (Id. at 3). He further asserts that the abuse (specifically, the kicks and beating of his back) was the precipitating cause of his January 2017 (and subsequent) sick call request. He claims that these sick call requests, however, were "improperly resolved" due to his "pre-existing cervical spinal stenosis". (Id. at 9-10).

**D.     Motion for Summary Judgment**.

After review of the pleadings, the Court ordered that Defendants' Answers, Special Reports, and exhibits (Docs. 13, 15, 18, 22, 33, 34, 40, 41, 60, 61, 64, 65, 87, 88, 98, 92, 99) be treated as

a motion for summary judgment. (Doc. 101).

In response to Defendants' motion for summary judgment, Plaintiff filed a motion to compel discovery, namely medical records, which was granted by the Court. (Docs. 109, 113). Plaintiff further filed an objection to the motion for summary judgment, wherein he argues Defendants should be denied summary judgment and provides factual details not contained in his previous pleadings. (Doc. 123). Specifically, Plaintiff asserts that Defendant David Dennis (who affirms by affidavit that he used no force on Nov. 9) was the "Officer who struck Stanton in the face with his fist", and Plaintiff contends that Defendant Whitley was present when Dennis hit him. (Id. at 2). Plaintiff also states that Defendant Whitley "then went and grabbed Stanton by his arm to lift him up and turn him over and place flexcuffs on him. When Whitley did this Stanton yelled out in pain because he had just recently had surgery and this 'grabbing and pulling' caused him to experience a sharp and sudden increase in pain." (Id.). Plaintiff contends:

> The actions of the defendant's were such that any reasonable person would have known that grabbing a physically disabled person such as Stanton who is confined to a wheelchair, assaulting for only uttering a refusal to comply, by striking him in the face with the closed fist. Then physically picking him up, flipping him over and placing flex cuffs on him [was excessive force].

(Id. at 7). In his objection to the motion for summary judgment, Plaintiff also provides the names of five inmates that were positioned close to him at the time of the incident and asserts that their testimony would corroborate his claims. (Id. at 5).

Accordingly, this motion for summary judgment is now ripe for consideration.

## II.    STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S. Ct. 2505, 91 L. Ed. 2d

202 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.") (emphasis in original); Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'") (emphasis in original) (citation omitted).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing or pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.

ThyssenKrupp Steel USA, LLC v. United Forming, Inc., 926 F. Supp. 2d 1286, 1290 (S.D. Ala. 2013) (internal citations omitted).

The requirement to view the facts in favor of the nonmoving party extends only to "genuine" disputes over material facts. Garczynski, 573 F.3d at 1165. "A genuine dispute requires

more than 'some metaphysical doubt as to material facts.'" Id. (citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. Id. In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007); see also Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. 2011) ("In cases where opposing parties tell different versions of the same events, one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations.").

## III.   DISCUSSION AND ANALYSIS

### A.    Immunity Defenses.

To the extent Plaintiff is proceeding against the correctional officer defendants in their official capacities, those claims fail. The Eleventh Amendment, which specifically prohibits suits against "the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State," has long been held to apply "equally to suits against a state brought in federal court by citizens of that state." Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998). "The state need not be formally named as a defendant for the amendment to apply; state officials sued in their official capacity are also protected by the amendment." Id. (citing Kentucky v. Graham, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)). Accordingly, the correctional officer defendants in this action, all of whom were employed by the State of Alabama Department

of Corrections at the time of the incidents alleged in the complaint, are immune from suit in their official capacities. See Parker v. Williams, 862 F.2d 1471, 1476 n.4 (11th Cir. 1989), overruled on other grounds in Turquitt v. Jefferson Cnty., 137 F.3d 1285 (11th Cir. 1998) ("[S]uits against an official in his or her official capacity are suits against the entity the individual represents."). Thus, the officer defendants, in their official capacities, are entitled to summary judgment as a matter of law.

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). While there is no doubt that the defendants in this action were acting within their discretionary authority at all times when the acts in question occurred, the Eleventh Circuit has made clear that the defense of qualified immunity "is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in Hudson and Whitley." Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002) (citation omitted). As to the remaining claims, officer defendants are entitled to qualified immunity unless Plaintiff can show that their conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known. See Belcher v. City of Foley, Ala., 30 F.3d 1390, 1395 (11th Cir. 1994). Therefore, the Court will now address whether this action identifies any constitutional violation.

**B.     Claims Under 42 U.S.C. § 1983.**

Plaintiff Stanton proceeds pursuant to 42 U.S.C. § 1983. "In order for a plaintiff to

establish a claim under 42 U.S.C. § 1983, he must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under the color of state law." Martinez v. Burns, 459 F. App'x 849, 850-851 (11th Cir. 2012) (citing Holmes v. Crosby, 418 F.3d 1256, 1258 (11th Cir. 2005)).  There is no dispute that the named defendants, as employees of the Alabama Department of Corrections and its contracted medical provider, are state actors for purposes of this action.  Thus, to establish his asserted claims, Stanton must establish that the named defendants, personally, acted to deprive him of a constitutional right.

In his complaint, Plaintiff Stanton alleges that Alabama Department of Corrections Commissioner Jefferson Dunn and Associate Commissioner Grantt Culliver are liable for assault and battery, excessive force, failure to protect, and implementation of the procedures used, as they are responsible for overseeing the operations of Holman Correctional Facility ("Holman").

He also alleges that Nurses Ashley Wall and Jonathan Langford are liable for denial of medical and inadequate treatment.

Plaintiff Stanton further claims that Warden Cynthia Stewart, Warden Terry Raybon, Warden Phillip Mitchell,[7] Darryl Fails, Ashley Kidd, Officer Scarborough, Timothy Vignolo, Nathan McQuirter, Danny Fountain, Jermaine Bullard, Officer Smith, John Pryor, Jesse Stanford, Steve Terry, Dominic Whitley, David Dennis, James Griffin, Bradley Walker, Ernest Duren, William Streeter, Charles Arthur, Captain Jeffery Baldwin, Aaron Lewis, Demetrius Fleeton, Michael Harrison, Timothy Robinson, Samuel Snelson, Daryl Brown, Omar Parker, Jesse Wilson, DeJour Knight, Mallorie Mixon, Alfie Pacheco, Anthony Hadley, Harry Finklea, Antonio McClain, Larry McCovery, Marcus Gaston, Teddy Jones, Greggory Patterson, Terry Edwards, Corbin

---

[7]     Plaintiff incorrectly identifies, in his complaint, Defendant Phillip Mitchell as "C. Mitchell".  (Doc. 1 at 15).

Tunstall, Clifton Sanders, Jasper Luitze, Jason Norris, and Cordaro Melton are liable for assault and battery, excessive force, failure to protect or intervene, and denial of medical care.

The Court will now address Plaintiff Stanton's claims in turn.

**1.    Excessive Force**.

The Eighth Amendment's prohibition against cruel and unusual punishment, U.S. Const. amend. VIII, governs the use of force by prison officials against convicted inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). In order to establish an Eighth Amendment excessive force claim against the defendants, Stanton must prove both an objective and subjective component. That is, he must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation and that the defendants "act[ed] with a sufficiently culpable state of mind; i.e., that they acted maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992) (citations omitted); see also Lumley v. City of Dade City, Fla., 327 F.3d 1186, 1196 (11th Cir. 2003) (to satisfy the object conduct, the plaintiff must show the complained of conduct "shocks the conscience").  Both inquiries are contextual, and "the objective harm inquiry is responsive to contemporary standards." Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010).  While not every "malevolent touch" by a prison guard amounts to excessive force, a de minimis use of force is cognizable under the Eighth Amendment if it is "repugnant to the conscience of mankind."  See Wilkins v. Gaddy, 559 U.S. 34, 37-38, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010) (quotation marks omitted).

"[W]here a prison security measure is undertaken to resolve a disturbance . . . that indisputably poses significant risks to the safety of inmates and prison staff, . . . the question of whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether the force was applied in a good faith effort to maintain or restore discipline or

maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21; see also Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002). Factors relevant to this determination include the "need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Skrtich, 280 F.3d at 1300. The absence of injury is one factor to be considered in determine whether or not force used was conceivably necessary and may indicate the amount of force used. Wilkins, 559 U.S. at 37. Once the need for force ceases, any continued force applied can constitute an Eighth Amendment violation. Williams v. Burton, 943 F.2d 1572, 1576 (11th Cir. 1991). When considering these factors, courts afford "a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." Fennell v. Gilstrap, 559 F. 3d 1212, 1217 (11th Cir. 2009) (quotation marks omitted).

### i. Defendants Not Present on November 9, 2016.

Defendants Jefferson Dunn, Grantt Culliver, Cynthia Stewart, Terry Raybon, Gary Scarborough, Otis Smith, and Phillip Mitchell assert that they were either not at Holman on Nov. 9 or not during the incident,[8] and Ashley Kidd and Timothy Vignolo assert that they were not

---

[8]    Defendants Dunn, Culliver, Stewart, Raybon, Scarborough, Smith, Mixon, and Mitchell assert the following by personal affidavit:
  1. Jefferson Dunn declares that he was not present at Holman on November 9, 2016 (Doc. 87-1);
  2. Grantt Culliver declares that he was not present at Holman on November 9, 2016 (Doc 34-24).
  3. Cynthia Stewart declares that she requested the CERT team report to Holman for an institutional search but was not present when the CERT Team entered on November 9, 2016.  She further declares she later looked in B-Dorm during the search but did not enter the dormitory (remaining in the corridor) due to inmates being unclothed during the search. (Doc. 34-3);
  4. Terry Raybon declares that he did not report to work until 8:00 a.m. on November 9, 2016, and was not present during the Nov. 9 incident in B-dorm (Doc. 34-25);

present in B-Dorm at the time of the incident.[9]  Plaintiff has failed to allege facts sufficient to show otherwise or even dispute the affirmations.

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted).  If a supervisor's liability cannot be established based on the supervisor's personal participation in the complained acts, a plaintiff must show a causal connection between the supervisor's actions and the alleged constitutional deprivation.  Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).

> A causal connection may be established when: 1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so; 2)  a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

---

5. Gary Scarborough declares that he was not present during the Nov. 9 incident, and this is supported by the Duty Post Log (which confirms Scarborough was transporting another inmate to the Dothan Eye Clinic during the time of the incident subject of this complaint) (Doc. 34-26);
6. Otis Smith declares that he, Commander of the Central CERT team, was not involved in the Nov. 9 incident or present at Holman on Nov. 9 and neither was the Central CERT team. (Doc.98-1);
7. Phillip Mitchell declares he was present when the CERT Team entered the facility on November 9, 2016.  He further declares he made a round through the facility while the CERT Team was inside B-Dorm; while he briefly looked inside of B-Dorm, he did not enter the dorm, remaining in the corridor.  (Doc. 34-9).

[9]    Defendants Kidd and Vignolo affirm the following by submitted affidavits:
1. Ashley Kidd declares that she was not present during the Nov. 9 incident in B-Dorm, as she was assisting with the institutional shakedown of female employees entering the facility and supervising the institutional count (Doc. 34-28);
2. Timothy Vignolo declares that he was not present during the Nov. 9 incident because he was instructed by the CERT team to exit B-dorm and provide security in the main hall (Doc. 34-27).

Valdes v. Crosby, 450 F.3d 1231, 1237 (11th Cir. 2006) (citing Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)). A custom is established by showing "a longstanding and widespread practice [such that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991) (A custom requires showing a practice so settled and permanent that it takes on the force of law). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." West Tillman, 496 F.3d 1321, 1329 (11th Cir. 2007) (quotation marks and citations omitted).

In this action, the record is void of facts or suggestion that these named defendants personally participated in the Nov. 9 incident or were present in B-dorm during the incident. Thus, to establish his claim, Plaintiff must show a causal connection between the supervisory defendant and the alleged unconstitutional conduct. Review of the complaint reveals that Plaintiff fails to go beyond listing the job titles of the supervisory defendants and fails to allege any facts connecting the supervisory defendants to the alleged excessive force in this action, with the exception of Defendant Cynthia Stewart.

In his complaint, Plaintiff asserts that Defendant Stewart is the head warden at Holman and that she, "Head Warden Cynthia Stewart[,] came to the front of B Unit and said, "I did what had to be done, to teach youll[sic] a lesson." (Doc.1 at 6). The undersigned finds that Plaintiff's alleged sworn facts could support an inference that the supervisor directed the CERT Team to act unlawfully or knew that the CERT team would act unlawfully and failed to stop them from doing so. Valdes, 450 F.3d at 1237.

Turning to Defendant Stewart's response to the allegations, the record is void of any facts,

evidence, or affirmations directly contradicting Plaintiff's allegations against her. (See Doc. 34-3). Accordingly, Defendant Stewart affirms that she requested the CERT Team's search of Holman. She affirms that the CERT Team was "under the supervision of the State CERT Coordinator and/or Team Commander to accomplish the goals with absolute minimum force, while seeking the positive resolution of the events." (Id. at 2-3). She further affirms that she made "a round through the facility while the CERT TEAM was inside of B Dorm", but she states she did not enter B-Dorm, clarifying that she remained "in the corridor". (Id. at 2). The undersigned notes, with limited knowledge of the layout/floor plan of B-Dorm, that Defendant Stewart's contention that she remained "in the corridor" corroborates (or does not contradict) Plaintiff's claim that Stewart "came to the front of B Unit", as the dormitory has a gate opening to the hallway. Thus, liberally construing Plaintiff's complaint as a *pro se* plaintiff, Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008), Plaintiff's alleged sworn facts indicate or support an inference that Defendant Stewart either directed the acts of the CERT Team or had knowledge that the CERT Team would use unconstitutional force to accomplish its goals on Nov. 9. This inference is enough to causally connect Defendant Stewart to the action of the CERT Team (at this stage of the action) and for Plaintiff to overcome summary judgment. Douglas v. Yates, 535 F.3d 1316, 1322 (11th Cir. 2008) (district court erred in granting summary judgment where plaintiff's allegations allowed "a reasonable inference that Yates knew that the subordinates would continue to engage in unconstitutional misconduct and failed to stop them from doing so.").

Consequently, Summary judgment is **GRANTED in favor of Defendants Dunn, Culliver, Raybon, Kidd, Scarborough, Vignolo, Smith, Mixon, and Mitchell,** as to all claims asserted against them, but is **DENIED** as to **Defendant Stewart**.

### ii.     Defendants Who Did Not Use Force on November 9, 2016.

Defendants Omar Parker, James Griffin, Jasper Luitze, and Jason Norris conclusively deny using any force during the November 9 incident.[10]  The affidavits submitted by Parker, Griffin, Luitze, and Norris each declare that the officer was assigned to a strategic position to maintain during the November 9 incident subject of this suit.  The officers affirm that they secured their posts and did not use force on inmates in B-Dorm on November 9.  Plaintiff has failed to respond to these affirmations or rebut them in any way, and the record is further void of any indication or suggestion that these defendants personally used force against Plaintiff on Nov. 9.  Consequently, Plaintiff has failed to carry his burden of showing a genuine issue of material fact exists as to whether or not these defendants used excessive force against him.  Zatler v. Wainwright, 802 F.2d 397, 401 11th Cir. 1986) ("[S]ection 1983 requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation.").

Accordingly, summary judgment **is GRANTED in favor of Defendants Parker, Griffin, Luitze, and Norris** as to the claims of excessive force asserted against them.

### iii. Defendants Who Deny Using Any Force on Plaintiff on November 9, 2016.

Defendants Charles Arthur, David Dennis, Ernest Duren, Harry Finklea, Marcus Gaston, Anthony Hadley, DeJour Knight, Antonio McClain, Larry McCovery, Nathan McQuirter, Alfie Pacheco, John Pryor, Jesse Stanford, William Streeter, Steve Terry, Bradly Walker, Dominic Whitley, Jesse Wilson affirm by affidavits that they did not use any force on Stanton on November

---

[10]     Omar Parker affirms that he remained at his strategic position at the front center of B-Dorm on Nov. 9.  (Doc. 65-5).
     James Griffin affirms that he stood watch atop the bathroom wall throughout the Nov. 9 incident and "did not use any force on inmate Jimmy Stanton."  (Doc. 34-19).
     Jasper Luitze affirms that he maintained his strategic post at the front right of B-Dorm on Nov. 9 and "did not use force during the disturbance."  (Doc. 92-1).
     Jason Norris denies using forcing during the Nov. 9 incident.  (Doc. 61-1).

9.[11]  Additionally, Defendant Darryl Fails declares that he was present in the dorm but returned to his office upon observing that "the CERT team Commanders were in charge and in control." (Doc. 40-1 at 2).  Accordingly, Fails' affirmed actions describe participation in a manner inconsistent with the use of force alleged by Plaintiff.[12]  With the exception of Dennis and Whitley, Plaintiff offers no evidence to refute these defendants' declarations that they did not use force against him and further fails to connect any of these defendants to his version of the force used against him. Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir.) (finding that a conclusory allegation without supporting evidence is due to be discounted), cert. denied, 498 U.S. 1103, 111 S. Ct. 1003, 112 L. Ed. 2d 1085 (1991).  The Court further finds that beyond mere acknowledgment that these defendants are members of one of the three CERT teams that participated in the Nov. 9 contraband search, the record is void of facts connecting them personally to Plaintiff's claims.  LaMarca v. Turner, 995 F.2d 1526, 1536 (11th Cir. 1993) (A plaintiff must connect an official's act or omission to the alleged constitutional deprivation to establish liability in §1983).  While the Court is required to draw all reasonable inferences in favor of the nonmoving party at the summary judgment stage, those inferences must be based on facts in the record.  Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005).  The Court, thus, finds Plaintiff has failed to establish a causal connection between these defendants and the alleged harm suffered, and a reasonable jury would not be able to return a verdict for Plaintiff on the issue of excessive force against Defendants **Charles Arthur,**

---

[11]     (See Docs. 34-5, 34-20, 61-5, 65-3, 87-2, 65-1, 34-21, 87-4, 61-3,34-8, 65-2, 61-11, 34-29, 34-22, 61-12, 34-18, 116-2, 34-4, respectively).

[12]     Defendant Fails affirms that he was present during the time of the incident subject of the complaint, but at time while he was in B-Dorm did he not "observe any members of the CERT Team assaulting any inmate, or use excessive force."  He further affirms that once the CERT Team Commanders entered the dorm, they oversaw the search of the dorm and he returned to his office. He further denies witnessing any of the conduct alleged by Stanton.  (Doc. 40-1).

**Ernest Duren, Harry Finklea, Marcus Gaston, Anthony Hadley, DeJour Knight, Antonio McClain, Larry McCovery, Nathan McQuirter, Alfie Pacheco, John Pryor, Jesse Stanford, William Streeter, Steve Terry, Bradly Walker, Jesse Wilson, and Daryl Fails** and summary judgment is **GRANTED** in their favor as to the claims of excessive force asserted against them.

As to Defendants David Dennis and Dominic Whitley, the undersigned finds that Plaintiff has carried his burden of showing a genuine issue of material fact exists as to whether or not these defendants used excessive force against him on Nov. 9. Defendant David Dennis affirms by affidavit, that he did not use force on Stanton. (Doc. 34-20). Likewise, Defendant Dominic Whitley affirms by affidavit that he "did not use force on inmate Jimmy Stanton" and any force he used on Nov. 9 was "justified, reasonable and documented." [13] (Doc. 116-2). Yet, Stanton asserts, under penalty of perjury, both defendants used force against him, giving rise to a genuine dispute

---

[13]     Following the Nov. 9 incident, as part of the Duty Officer's Report, CERT Team members provided unsworn statements describing their actions (namely, the force used) during the search of B-Dorm. Dominic Whitley stated:

> On November 9, 2016, I Correctional Lieutenant Dominic Whitley entered Dormitory B ordering inmates to lay face down on their bed. An unknown inmate stood up and I placed him on his bed by grasping his shoulders and placing him back down on his bed. I then ordered the inmate to place his hands behind his back. I placed flex cuffs on the unknown inmate.

(Doc. 34-1 at 20). Defendant David Dennis stated:

> On November 9, 2016, I Correctional Officer David Dennis entered Dormitory B and observed an unknown inmate standing by his bed. I ordered the unknown inmate to lay down on his bed, face down and place his hands behind his back. The inmate refused to comply with the order given. I placed the unknown inmate on his bed by applying the two on one takedown. Another Cert team member placed flex cuffs on the inmate and escorted him to the Health Car Unit. No other force was used.

(Doc. 34-2 at 2).

of material fact. <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1225-26 (11th Cir. 2004); <u>see also</u>

<u>United States v. Stein</u>, 881F.3d 853, 858-59 (11th Cir. 2018) (Rule 56 does not require that "an

otherwise admissible affidavit be corroborated by independent evidence") (en banc).

> The question on summary judgment is not about which side has offered the most evidence. Instead, that question is simply whether there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Anderson</u>, 477 U.S. at 249, 106 S. Ct. at 2511. While a plaintiff "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," <u>id</u>. at 248, 106 S. Ct. at 2510 (quotation marks and alterations omitted), we have long recognized that "[c]ourts routinely and properly deny summary judgment on the basis of a party's sworn testimony," <u>Price v. Time, Inc</u>., 416 F.3d 1327, 1345 (11th Cir. 2005).

<u>Sears v. Roberts</u>, 922 F.3d 1199, 1207-08 (11th Cir. 2019). "Summary judgment is not a time for

fact-finding; that task is reserved for trial." <u>Sconiers v. Lockhart</u>, 2020 U.S. App. LEXIS 292, *10

(11th Cir. Jan. 7, 2020).

Consequently, the competing narratives are an issue of credibility, thus a factual issue, and

a court may not grant summary judgment. <u>Id</u>. (citing <u>Mize v. Jefferson City Bd. of Educ</u>., 93 F.3d

739, 742-43 (11th Cir. 1996). For these reasons and those discussed *infra,* at section iv., it is

recommended that summary judgment be **DENIED** as to **Defendants David Dennis and Dominic**

**Whitley**, on the claims of excessive force, at this time.

### iv. Defendants Who Deny Excessive Force Used on November 9, 2016.

The remaining CERT team members in this action acknowledge being present in B-Dorm

on Nov. 9 and admit to participating in the restraining, arresting, and escorting of inmates but deny

that excessive force was used on any inmate, including Plaintiff. The submitted affidavits of these

officer defendants are summarized as follows:

Defendants Jermaine Bullard, Terry Edwards, Danny Fountain, Demetrius Fleeton, Greggory Patterson, and Clifton Sanders aver that while present in the dormitory, they did not "observe any abuse, assault or use of excessive force to any person." (Docs. 34-6, 116-1, 34-7, 61-13, 61-4, 61-2)

Defendant Jeffery Baldwin, Commander of the North Central CERT team, declares that minimum force was used against non-compliant inmates on November 9 to gain their compliance in being placed in flex cuffs. He further affirms that once inmates were placed in flex cuff, all force stopped. (Docs. 61-6).

Defendants Aaron Lewis and **Timothy Robinson,** aver that they "entered B-Dorm and assisted other team members with escorting several inmates from their beds to the shower area. [And,] also assisted with some inmates that were hiding under their beds." The defendants deny observing any abuse, assault or excessive force used on any inmate. (Docs. 61-10, 61-9).

Defendants Samuel Snelson, Corbin Tunstall and Daryl Brown aver that they assisted in securing inmates in flex cuffs and escorted inmates throughout the dorm area. (Docs. 61-8, 87-5, 61-7). Defendant Tunstall further avers that he did not "observe any abuse, assault or use of excessive force to any person." (Doc. 87-5).

Defendant Teddy Jones avers he has "no knowledge of assaulting inmate Jimmy Stanton." (Doc. 87-3).

Defendant Cordaro Melton affirms that he placed the riot shield at the front of the dorm and assisted with securing the inmates to the front of the dorm to be identified prior to searching the inmates and their property for weapons and contraband. He further affirms that at no time did he "violate the constitutional rights of inmate Jimmy Stanton." (Doc. 65-4 at 2).

The responses of these CERT team members are categorically vague and undescriptive of the actions personally taken and/or observed in B-Dorm on Nov. 9. To be clear, their conclusory denials that excessive force was used is simply insufficient to overcome their burden of proof at this stage of this case. Accordingly, the undersigned turns to Plaintiff's allegations to determine if he has plead sufficient facts to establish a constitutional violation of excessive force.

In analyzing the claims put forth by Stanton, the Court begins its analysis with the general rule that an inmate is not at liberty to ignore the orders of correctional officials. The law is clear that some amount of force is warranted when orders are disobeyed, and "prison guards do not have the luxury or obligation to convince every inmate that their orders are reasonable and well-thought out. Certainly they are not required to do so where an inmate repeatedly fails to follow those

orders." <u>Danley v. Allen</u>, 540 F.3d 1298, 1307 (11th Cir. 2008), <u>overruled on other grounds as recognized by</u> <u>Randall v. Scott</u>, 610 F.3d 701 (11th Cir. 2010)).

> Discipline in a maximum security correctional institution no doubt is difficult, but it is essential if the prison is to function and provide for the care, safety and security of the staff and inmates. Services to provide food, clothing, health, medical, cleaning, laundry and all other services would come to end without discipline. Mob rule would take over. There would not, and could not, be any protection for staff or inmates. Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them. Someone must exercise authority and control. One can quickly reason what would happen in a maximum security prison without proper discipline.

<u>Soto v. Dickey</u>, 744 F.2d 1260, 1267 (7th Cir. 1984). Accordingly, "[p]rison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." <u>Bennett v. Parker</u>, 898 F.2d 1530, 1533 (11th Cir. 1990). "The use of force must stop when the need for it to maintain or restore discipline no longer exists." <u>Skrtich v. Thornton</u>, 280 F.3d 1295, 1304 (11th Cir. 2002) (citation omitted).

In this case, Stanton acknowledges his failure to obey the orders of the CERT team, though justified because of his physical limitations. The defendants similarly contend that Stanton failed to follow their orders to get out of his wheelchair and lie on his bed but aver Stanton was not considered a threat and no force was used on him. Plaintiff, on the other hand, alleges that tight handcuffs were placed on him, that he was hit with a closed fist, and that officers threw him to the ground and walked on his back. Accordingly, the parties have presented two distinctly different versions of the facts.

To establish his claim, Plaintiff must show that the alleged wrongdoing was objectively harmful enough to rise to the level of a constitutional violation. <u>Hudson v. McMillian</u>, 503 U.S. 1, 8-10, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). In <u>Hudson</u>, the Supreme Court explained:

> In the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary

> standards of decency always are violated. This is true whether or not significant injury is evident. . . . That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."

Id. at 8-10 (internal quotations and citations omitted). Thus, the relevant inquiry under the objective prong of Hudson is whether the force applied was objectively harmful enough to establish a constitutional violation. Furthermore, courts "must . . . give a 'wide range of deference to prison officials acting to preserve discipline and security,' including when considering '[d]ecisions made at the scene of a disturbance.'" Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (per curiam) (citations omitted).

Defendants insist that the medical records support their denial that excessive force was used on Stanton. First, no body chart exists for Stanton for Nov. 9, indicating that he had no injuries necessitating a medical examination. Second, no sick call requests, complaints, or grievances were filed seeking medical attention until January 2017, nearly two months later. Third, when Stanton was subsequently evaluated in January, February, March and April 2017, the medical records indicate that Stanton denied that his complaints of headaches, backaches, and neck pain were related to an injury and, instead, associated the symptoms with his prior July 2016 spinal surgery and a vehicle accident which occurred prior to his incarceration. (See Doc. 15-1 at 2, 3, 23). If these medical records were unchallenged, the undersigned would no doubt declare Stanton's allegations implausible. Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Stanton, however, asserts in his complaint that many injured inmates were refused a body chart and

treatment by the nurses on duty and were instructed to sign up for sick call. In a subsequent pleading he states that he was escorted to the health care unit following the Nov. 9 incident but "was not allowed a medical assessment for possible injury by health care employees", despite that the "beating" and flex cuffing caused his left side to go numb. (Doc. 35 at 2). Accordingly, it is Stanton's allegation that when escorted to the medical unit, he did "complain that the flex cuffs cut off his circulation, but his complaint was ignored by medical staff." (Doc. 35 at 4). He further claims that following the incident, he complained of head and neck pain due to aggravation of his spinal cord injury from the force used on Nov. 9 – identifying and relying on the same January through March 2017 medical records purported by defendants and maintaining that his complaints were "improperly resolved by a nurse because plaintiff had a pre-existing cervical spinal stenosis condition that caused his left arm to go numb." (Doc. 35 at 9).

Although Defendants stand on the medical records as firm support that no force was used against Plaintiff, the undersigned cannot. "[T]he medical records here are not the same as the 'incontrovertible' video evidence that courts must accept over contradictory sworn statements, since those records involve people and all their attendant mental infirmities, biases, and limitations-in their creation." Sears v. Warden Okeechobee Corr. Inst., 762 F. App'x 910, 917 (11th Cir. 2019). Accordingly, reliance on such contested records would be inappropriate and against the required legal standard for summary judgment to weigh all evidence and factual inferences in the light most favorable to the nonmovant, Plaintiff, Kingsland, 382 F.3d at 1226, as there is a big difference between the incontrovertible video evidence presented in Scott and the evidence submitted here.[14] Sears v. Roberts, 922 F.3d at 1208 (The defendants proffered evidence

---

[14]     In the case at hand, Defendants rely on the affidavits of CERT team members (which provide vague, conclusory denials), Incident Reports (which Defendants contend contain an

of personal affidavits, incident reports, officer duty reports, disciplinary reports, etc. falls short of establishing "incontrovertible" evidence.). Consequently, the record before the court lacks incontrovertible objective evidence rendering Stanton's account implausible. Id. At the summary judgment stage of the case, conflicting evidence must be resolved in favor of Stanton.

Notably, however, there are no allegations of torture designed to inflict extreme pain without leaving tangible injury or conduct that otherwise is so egregious that one could reasonable call it repugnant to the conscience of mankind. Therefore, if Plaintiff suffered no injuries as alleged by Defendants or only *de minimis* injuries, that would be an important factor in determining whether more than *de minimis* force was used.[15] However, even in the absence of serious or

_____

inadvertent scriveners error that force was used), medical records (the accuracy of which is disputed), and other prison records.

[15]    In determining whether the extent of Plaintiff's alleged injuries indicates the use of excessive force, the Court finds instructive the types of injuries which have been held to be insufficient to support excessive force claims under the Eighth Amendment, such as a scratch on inmate's side from a correctional officer pushing, shoving, and hitting him in an effort to force inmate to comply with an order to pick up his hoe and get back to work, Walker v. Thames, 2001 U.S. Dist. LEXIS 5334, 2001 WL 394911, * 6 (S.D. Ala. 2001) (unpublished); scratches on plaintiff's elbow, bump and one-half inch skin tear behind the ear, abrasion on the shoulder, and jaw pain from correctional officer pushing plaintiff into a glass window while taking him to a holding cell, Lanier v. Fralick, 2000 U.S. Dist. LEXIS 18046, 2000 WL 1844679, *1-2, 5-6 (S.D. Ala. 2000) (unpublished); blow to the forehead with a baton, resulting in no bruising or swelling, Clark, 2000 U.S. Dist. LEXIS 15347, 2000 WL 1568337, *18-19; a sore, bruised ear lasting three days, Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); bruises on a prisoner's back from being shoved into a door frame, DeWalt v. Carter, 224 F.3d 607, 620 (7th Cir. 2000); lacerations, bruises, cuts, and swelling as a result of a guard hitting plaintiff's hand with a plastic box when plaintiff reached through a trap in the door of his cell, White v. Matti, 58 F. App'x 636, 638 (7th Cir. 2002) (unpublished); pain, swelling, and bruising from a guard closing a cuffport door on a prisoner's hand, Outlaw v. Newkirk, 259 F.3d 833, 839-40 (7th Cir. 2001); a bruised shoulder from being shoved into a wall, Markiewicz v. Washington, 175 F.3d 1020, *1 [published in full-text format at 1999 U.S. App. LEXIS 5997] (7th Cir. 1999) (unpublished); a 1.5 inch scratch on the back of the hand from handcuffs, Schoka v. Swinney, 53 F.3d 340, *1 (9th Cir. 1995) (unpublished); daily headaches, not requiring treatment, from being hit with a water bucket, Lunsford v. Bennett, 17 F.3d 1574, 1582 (7th Cir. 1994); Rodriguez v. Farrell, 280 F.3d 1341, 1352 (11th Cir. 2002) "[p]ainful handcuffing, without more, is not excessive force in case where the resulting injuries are minimal"; Nolin v. Isbell, 207 F.3d 1253, 1257-58 (11th Cir. 2000)

significant injury, a plaintiff can establish a constitutional claim based on excessive force.

Therefore, assuming as Plaintiff alleges, that Officer Dennis punched him in the face with a closed

fist and Officer Whitley "grabbed and pulled" him up to place flex cuffs on him (causing him pain

and cutting off his circulation), and unnamed officers threw him to the ground and walk on his

back (exacerbating his spinal cord issues), a reasonable fact-finder could determine that such

treatment of a disabled inmate, sitting in a wheelchair,[16] who was not a suspect from the Nov. 7

---

(holding as a matter of law the amount of force used during an arrest to handcuff a suspect was not excessive and would not defeat an officer's qualified immunity where the resulting injury was merely bruising); Gold v. City of Miami, 121 F.3d 1442, 1444 (11th 1997) (concluding handcuffs applied too tight and for too long was *de minimus* force); Hendrickson v. Cervone, 661 F. App'x 961, 970 (11th Cir. 2016) (no excessive force found where plaintiff was placed in handcuffs behind his back for over three hours and complained of "extreme discomfort due to prior shoulder injury and burn scars" but sustained no lasting injuries from the handcuffing).

On the other hand, the following types of injuries have been held to be sufficient to support excessive force claims: injury to an inmate's back from guards snapping inmate's head back with a towel, slapping inmate twice in the face, and kicking inmate, Harris v. Chapman, 97 F.3d 499, 506 (11th Cir. 1996); cuts, scrapes and contusions to the face, head, and body from a group beating, Gomez v. Chandler, 163 F.3d 921, 924-25 (5th Cir. 1999); a broken finger, Escobar v. Zavaras, 149 F.3d 1190 (10th Cir. 1998); and permanent scarring and numbness from handcuffs, Davidson v. Flynn, 32 F.3d 27, 29 n.1 (2d Cir. 1994).

[16]      In determining constitutional violations based on the amount of force used, courts "look to what the officer knew or reasonably should have known at the time of the incident. Robinson v. Lambert, 753 F. App'x 777, 781 (11th Cir. 2018) (citing Lee v. Ferraro, 284 F.3d 1188, 1200 (11th Cir. 2002). In this action, it is clear that Defendants knew Stanton was sitting in a wheelchair. Beyond such knowledge, it is important to know whether Stanton was capable of walking, whether Defendants knew this, whether Defendants were aware of his previous surgery, and whether Defendants knew Stanton's spine was injured? These questions relate directly to whether or the force used on Stanton as alleged was excessive. See Rodriguez v. Farrell, 280 F.3d 1341, 1352-53 (11th Cir. 2002) (finding that officer did not use excessive force in handcuffing an arrestee where he had no knowledge or reason to know of the arrestee's recent elbow surgery even though it caused severe injury).

incident, was an excessive amount of force,[17] regardless of the extent of injuries sustained.[18]

Therefore, summary judgment is **DENIED** as to Defendants **Jeffery Baldwin, Daryl Brown, Jermaine Bullard, Terry Edwards, Danny Fountain, Demetrius Fleeton, Teddy Jones, Aaron Lewis, Cordaro Melton, Greggory Patterson, Timothy Robinson, Clifton Sanders, Samuel Snelson, Corbin Tunstall,** as well as **David Dennis** and **Dominic Whitley**, at this time, on the claim of excessive force.

### 2.      Failure to Protect.

A prison official violates the Eighth Amendment when he or she acts with deliberate indifference to a substantial risk of serious harm to an inmate. Farmer v. Brennan, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  "An officer who is present at the scene [of an altercation] and who fails to take reasonable steps to protect the victim of another officer's use of

---

[17]      It should also be noted, that evidence exists that Holman's B-Dorm was a hostile, threatening, and violent environment that housed gangs and gang leaders.  The quantity and types of weapons recovered from the search on Nov. 9 and the history of violence in B-Dorm confirms the dangerousness of the dormitory.  A fact-finder could determine the perceived threat to CERT Team members on Nov. 9 necessitated force, including application of force to Stanton, who admittedly failed to follow the CERT Team's orders.  A fact-finder may also conclude that the handcuffing of Stanton was necessary and initiated for safety reasons, not maliciously and sadistically to cause pain or harm.   Accordingly, a fact-finder could determine that excessive force was not used against Stanton.

[18]      As previously discussed, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 559 U.S. at 38-39 (stating that the "core judicial inquiry" for an excessive force claim under the Eighth Amendment is not based on the extent of the plaintiff's injury, but rather on "the nature of the force" used, i.e., "whether [the force] was nontrivial and 'was applied . . . maliciously and sadistically to cause harm'") (citation omitted). Accordingly, a plaintiff claiming a violation of his constitutional rights is entitled to nominal damages "even if he cannot prove actual injury sufficient to entitle him to compensatory [or punitive] damages." Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003); see also Graham v. Elliott, 2018 U.S. Dist. LEXIS 126886, at *11, 2018 WL 3625863, at *4 (N.D. Fla. June 27, 2018) (stating that nominal damages "are typically limited to $1.00 in the Eleventh Circuit"), report and recommendation adopted, 2018 U.S. Dist. LEXIS 126565, 2018 WL 3622810 (N.D. Fla. July 30, 2018).

excessive force can be held liable for his nonfeasance." Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008). But, an officer may only be liable for failing to protect if the officer was in a position to intervene yet failed to do so. Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 924 (11th Cir. 2000). As previously discussed, it is unclear at this time whether excessive force was used against Plaintiff on November 9, 2016. Similarly, it cannot be determined from the sparse affidavit responses of the CERT Team defendants what each observed or his position in relation to Plaintiff to determine if the defendant was reasonably able to protect Plaintiff.

Stanton has alleged a failure to protect claim against Dunn, Culliver, Stewart, Raybon, Mitchell, Fails, Kidd, Scarbrough, Vignolo, and all members of the CERT team named in the lawsuit.

As previously discussed, the record evidences that Defendants Dunn, Culliver, Stewart, Raybon, Mitchell, Fails, Kidd, Scarbrough, and Vignolo were not present in B-Dorm at the time of the incident, and Plaintiff has failed to plead any facts indicating otherwise. Plaintiff has further failed to allege a causal connection between an action of the named supervisor and the alleged excessive force used, with the exception of Defendant Stewart. Without personal participation or a causal connection between the supervisor's action and the alleged constitutional deprivation, there can be no liability under § 1983. See Hartley, 193 F.3d at 1269; Brown, 906 F.2d at 671. Accordingly, Defendants Dunn, Culliver, Raybon, Mitchell, Kidd, Scarbrough, and Vignolo cannot be liable for failing to protect Plaintiff and summary judgment should be granted in their favor. For the reasons previously discussed, **Defendant Stewart** is **DENIED** summary judgment on the failure to protect claim.

The undersigned turns now to the allegations asserted against the CERT team defendants and Defendant Fails (who avers he was present in B-Dorm for an undisclosed time before returning

to his office).  Based on Plaintiff's complaint allegations, any CERT team officer who removed Plaintiff from his bed or wheelchair or was present near his bed may have been in a position to intervene or protect Plaintiff if excessive force was applied as alleged.  Furthermore, without a broader understanding of the layout of B-Dorm or the procedures or practices used by the CERT team, it is impossible to determine if an officer present in B-Dorm was in a position to intervene or protect Plaintiff from the alleged excessive force utilized.  Given the lack of specificity contained in the affidavits of the defendants, it reasons that it is premature to grant summary judgment to any CERT team member who was present in B-Dorm and may have been in a position to intervene in the alleged use of force.  See Giles v. Kearney, 571 F.3d 318, 327 (3d Cir. 2009) ("No reasonable officer could agree that striking and kicking a subdued, nonresisting inmate in the side, with force enough to cause a broken rib and collapsed lung, was reasonable or necessary under established law.").  Accordingly, this is a genuine issue of a material fact that must be determined by a trier of fact and may not be decided on summary judgment.  Consequently, summary judgment is **DENIED** as to **Jeffery Baldwin, Daryl Brown, Jermaine Bullard, Terry Edwards, Danny Fountain, Demetrius Fleeton, Teddy Jones, Aaron Lewis, Cordaro Melton, Greggory Patterson, Timothy Robinson, Clifton Sanders, Samuel Snelson, Corbin Tunstall, David Dennis, Dominic Whitley,** Charles Arthur, Ernest Duren, Harry Finklea, Marcus Gaston, Anthony Hadley, DeJour Knight, Antonio McClain, Larry McCovery, Nathan McQuirter, Alfie Pacheco, John Pryor, Jesse Stanford, William Streeter, Steve Terry, Bradly Walker, Jesse Wilson, and Daryl Fails.

###     3.      Denial of Medical Care.

The Eighth Amendment prohibits indifference to a convicted prisoner's serious medical needs so deliberate that it "constitutes the unnecessary and wanton infliction of pain." Estelle v.

Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). "To prevail on a claim of deliberate indifference, a plaintiff must show: (1) a serious medical need; (2) defendant's deliberate indifference to that need; and (3) causation between the defendant's indifference and the plaintiff's injury." McDaniels v. Lee, 405 F. App'x 456, 458 (11th Cir. 2010) (citing Mann v. TaserInt'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009)). To satisfy the first objective element, Plaintiff must prove his condition was, in fact, a serious medical need. "A 'serious medical need' is one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1317 (11th Cir.2010) (internal quotations omitted). "To satisfy the subjective element of [a] deliberate indifference [claim, a] . . . Plaintiff must prove three subparts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005) (internal quotations omitted) (noting that subjective knowledge requires that defendant "'must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* [ ] must also draw the inference'") (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811, (1994)); see also Townsend v. Jefferson Cnty., 601 F.3d 1152, 1158 (11th Cir. 2010).

Turning to Plaintiff's allegations, in his complaint (doc. 1), Plaintiff fails to mention any injury or describe any harm beyond the blanket statement that the "zipties cut off my circulation to my hands", and the complaint fails to state that Plaintiff was taken to the health care unit. (Doc. 1 at 6). Plaintiff further fails to indicate or suggest in his complaint that he ever mentioned to any defendant that he needed medical attention. In a responsive pleading (doc. 35), however, Plaintiff alleges the flex cuffs used caused "his left side to go numb", but his complaint "that the flex cuffs cut off his circulation" was "ignored by medical staff." (Doc. 35 at 2, 4). It remains unclear from

the subsequent pleading, however, to whom Plaintiff complained while in the health care unit. And, still, Plaintiff's pleading is void of an injury or symptom suggesting a serious medical need or indicating a serious threat of harm. After Defendants answers and special reports were converted to a motion for summary judgment, Plaintiff objected to the motion declaring, for the first time, "that he did request and state that he needed to go to the Health Care Unit at Holman for a body chart, and the pain he was experiencing from the physical force that was used against him. And that he was denied access to the medical care he sought by the defendants", and he further claims the he "was not taken to the Health Care Unit and was denied medical care." (Doc. 123 at 4). Notably, Plaintiff's medical care claim is complicated by his conflicting factual narratives, which the Court reads and interprets with leniency. GJR Invs. V. Cnty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998) ("Courts do and should show a leniency to *pro se* litigants not enjoyed by those with the benefit of a legal education."). "Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action." Id. (internal citations omitted). No matter the version of facts considered, Plaintiff has failed to establish the necessary prongs of a deliberate indifference claim.

While a lack of circulation in the hands and/or pain could qualify as serious medical condition, the symptoms alone are not enough to establish a serious medical need. Instead, courts must look to the seriousness of the condition at the time of the events alleged in the complaint. Reading Plaintiff's complaint in a light most favorable to him, the Court finds that Plaintiff has not alleged an objectively serious medical need. The record is void of any allegation or indication that Stanton showed signs of swelling, bleeding, discoloration, bone displacement, infection, or any other visible signs demonstrating an obvious need for medical treatment that would have put

Defendants, officers or nurses, on notice that he was at substantial risk of serious harm. Consequently, Defendants may not be liable for failing to treat a medical need that is not sufficiently serious. At best, Plaintiff alleges he notified an unknown medical staff member that his hand circulation was "cut off" following the incident and was denied treatment. This claim, however, lacks any indication or suggestion that Stanton was suffering pain from the cuffs being too tight, or that he informed anyone his left arm was numb, or that he notified an officer that the cuffs were too tight. Accordingly, Plaintiff's claim falls short of establishing an objectively serious medical need or that Defendants had subjective knowledge of a serious risk of harm to Plaintiff.

In fact, the closest Plaintiff comes to alleging that any defendant had possible knowledge of harm to him is found in his objection to this motion for summary judgment, filed after Defendants' special reports. Plaintiff contends in his objection to the motion that he experienced pain the moment he was "picked up" and cuffed by Officer Whitley. Plaintiff states, for the first time, that when Officer Whitley grabbed his arm to lift him up and turn him over to place cuffs on him, that he "yelled out in pain" because the officer's "'grabbing and pulling' caused him to experience a sharp and sudden increase in pain" and he was denied a body chart and medical care. (Doc. 123 at 2, 4). Taking Stanton's allegations as true, that he suffered pain when handcuffs were placed on him and he was not taken to the health care unit following the Nov. 9 incident, the record evidences that Stanton did not seek subsequent medical treatment for the symptoms, including a sick call request, filed grievances, complaints to officers, or complaints to medical staff until arguably January 2017. Stanton further fails to identify any particular treatment necessary or even advisable for the alleged injury or state how the lack of treatment caused him any pain or worsened the harm or detail the duration or level of the pain. Accordingly, the record supports that Plaintiff, at most, suffered temporary numbness in his left arm from the secured handcuffs and momentary

exacerbation of prior surgical pain, which is insufficient to establish an objectively serious medical need and cannot be said to rise to a constitutional level. Consequently, Stanton's facts establish negligence, not deliberate indifference. See Wilson v. Seiter, 501 U.S. 294, 305, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (mere negligence does not satisfy the deliberate indifference standard). In total, the record is void of evidence that the defendants had reason to know that Stanton was at risk of serious harm and acted with an attitude of deliberate indifference to his condition; thus Stanton has failed to meet the criteria (both objective and subjective) of a valid § 1983 claim. Accordingly, Stanton's claim for denial of medical care against any defendant fails, as it relates to medical treatment directly following the Nov. 9 CERT team restraint of inmates.

As to Stanton's claims that he was denied medical treatment for complaints of severe head and neck pain (doc. 35 at 2, 8-9), such allegations are blatantly contradicted by the record, which reflects Stanton received immediate and adequate medical attention upon every request for head and neck pain.

Review of the record reveals (and Stanton does not dispute) that Stanton did not seek any medical treatment for his head, neck, or back in November or December, 2016. Stanton first sought treatment following the November 9, 2016 incident on January 6, 2017.[19] (Doc. 15-1 at 23). Stanton was subsequently examined on January 11, 20, February 21, March 30, April 4, 12, 28, 2017. (Doc. 15-1 at 10, 14, 19, 21, 23). The record further evidences that Stanton was provided Motrin for his complaints of pain, profiles for his mobility limitations (including, allowing him to walk to the chow line ten minutes before serving time, a wheelchair, a foam support mattress), cervical x-rays, and referral to a neurologist. (Id. at 12, 15, 16, 22, 24, 123, 124, 125). Accordingly,

---

[19]     Notably, Stanton sought medical treatment (specifically, pain medication) in September 2016 for complaints of neck and lower back pain, also described as being related to his previous back surgery. (Doc. 15-1 at 38, 44).

the record is replete with documentation of medical treatment received by Stanton. See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) ("When a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation.").

Consequently, Stanton has failed to establish a medical deliberate indifference claim against Nurses Wall and Langford, or any Defendant in this action, and summary judgment is **GRANTED** to **all defendants** as to the asserted claims of failure to provide adequate medical care.

## C.     Assault and Battery.

Stanton asserts state law claims of assault and battery against the correctional officer defendants. As discussed *supra,* there remains a question of material fact as to the appropriateness of force used against Plaintiff. Similarly, there remains a question as to whether or CERT Team defendants are liable for state law assault claims. Out of an abundance of caution, it is recommended that the state law claims of assault and battery be carried along with the alleged Eighth Amendment violations of excessive force. Accordingly, **Defendants Jeffery Baldwin, Daryl Brown, Jermaine Bullard, Terry Edwards, Danny Fountain, Demetrius Fleeton, Teddy Jones, Aaron Lewis, Cordaro Melton, Greggory Patterson, Timothy Robinson, Clifton Sanders, Samuel Snelson, Corbin Tunstall, Cynthia Stewart,** as well as **David Dennis** and **Dominic Whitley** are **DENIED** summary judgment as to the claims of assault and battery, at this time.

Furthermore, the **remaining officer Defendants** are **GRANTED** summary judgment as the state law claims of assault and battery asserted against them and that such claims be dismissed for failure to state a claim.

## D.     Slander and Harassment.

Plaintiff seeks to recover damages for "slander and harassment" in his request for relief. (Doc. 1 at 17).

In his complaint, Plaintiff makes the conclusory allegation, the CERT Team members continued to harass inmates and make belittling statements. (<u>Id</u>. at 5). However, the complaint is void of any specific facts necessary to establish a claim of slander or harassment, nor does Plaintiff causally connect any defendant to such actions in order to establish a claim, and neither does Plaintiff raise such claims in subsequent pleadings. Accordingly, the undersigned deems these claims to be insufficiently plead and abandoned. Accordingly, Plaintiff's claims of slander and harassment against all Defendants are **DISMISSED**.

**E.  Claim of Implementation of Procedures Used**.

Plaintiff asserts a claim against Defendants Dunn and Culliver of "Implimentation[sic] of the procedures used." The undersigned assumes that this is an attempt to allege that Defendants Dunn and Culliver are responsible for the manner in which the CERT Team entered Holman on Nov. 9 and/or responded to the situation. However, the record is void of facts causally connecting Dunn and Culliver to the alleged unconstitutional actions of excessive force or failure to protect.

Defendant Dunn affirms that, as the Commissioner of the Alabama Department of Corrections, he does not handle the day to day operations at Holman or of the CERT Team, and he was not present at the time of the Nov. 9 incident. (Doc. 87-1). Defendant Grantt Culliver, the Associate Commisioner of Operation for the Alabama Department of Corrections, is responsible for day to day operations of the male correctional facilities, including Holman, and does oversee the CERT Team. However, Defendant Culliver avers that the CERT members participate in regular training and advised in the proper use of force and crowd control among other emergency procedures, and the events described by Stanton are not in compliance with the training for entering

a housing unit. (Doc. 34-24). Defendant Culliver further avers that although he was not present at Holman on Nov. 9, the actions described by Stanton are not characteristic of CERT procedures, are not the manner in which the team is trained, and that he has never witnessed the team proceed in such a manner. (Id.). Accordingly, the record reflects that Defendants Dunn and Culliver did not personally participate in the CERT Team's alleged actions.

As previously discussed, in a § 1983 action, if a supervisor's liability cannot be established based on personal participation in the complained acts, a plaintiff must show a causal connection between the supervisor's actions and the alleged constitutional deprivation. Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). However, Plaintiff fails to do so. Plaintiff fails to show a history of widespread CERT Team abuse, a supervisor's custom or policy resulting in deliberate indifference to constitutional rights, or facts supporting an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. Consequently, the "Implimentation[sic] of the procedures used" claim is **DISMISSED**.

## F. Request for Declaratory and Injunctive Relief.

In addition to monetary relief, Stanton requests a declaratory judgment and injunctive relief. A remedy for declaratory relief is created by 28 U.S.C. § 2201(a), which provides that "[i]n a case of actual controversy . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Declaratory relief is by its nature prospective." McGee v. Solicitor Gen. for Richmond Cnty., Ga., 727 F.3d 1322, 1325 (11th Cir. 2013). That is, it is "[i]n contrast . . . [to] a claim for money damages [that] looks back in time and is intended to redress a past injury." Adler v. Duval Cnty. Sch. Bd., 112 F.3d 1475, 1477 (11th Cir. 1997). Thus, to have

standing to seek declaratory relief, a plaintiff "'must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.'" Koziara v. City of Casselberry, 392 F.3d 1302, 1305 (11th Cir. 2004) (quoting Johnson v. Bd. of Regents of Univ. of Ga., 263 F.3d 1234, 1265 (11th Cir. 2001)).  "[T]he continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury."  Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985).  A remote possibility of a future injury occurring is not adequate to meet the "actual controversy" requirement for declaratory relief.  Id.  The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred.  Ciudadanos Unidos de San Juan v. Hidalgo Cnty. Grand Jury Comm'rs, 622 F.2d 807, 821-22 (5th Cir. 1980), cert. denied, 450 U.S. 964, 101 S. Ct. 1479, 67 L. Ed. 2d 613 (1981).

The record confirms that Stanton is currently incarcerated at Limestone Correctional Facility, and Stanton has not made a specific showing (or even an allegation) that there is any likelihood he will be subjected to unlawful conduct by a named Defendant in the future.  See City of Los Angeles v. Lyons, 461 U.S. 95, 104, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983) (merely asserting that one may again be subject to unlawful conduct does not generally give rise to standing to demand prospective relief).  Thus, Stanton's claim for declaratory relief fails "to satisfy the threshold 'case or controversy' requirement of article III and the 'actual controversy' prerequisite of 28 U.S.C. § 2201" and, therefore, is subject to **DISMISSAL**.  See Emory, 756 F.2d at 1552.

Similarly, "[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief if the party alleges . . . a real and immediate — as opposed to a merely conjectural or hypothetical - threat of *future* injury." Church v. City of Huntsville, 30 F. 3d 1332, 1337 (11th

Cir. 1994) (emphasis in original). A review of Stanton's complaint reveals no allegation or claim of future harm. Accordingly, Plaintiff's claim for injunctive relief is due to be **DISMISSED**.

## IV.    CONCLUSION.

It is **ORDERED** that the above-referenced motions for summary judgment are **GRANTED** as follows:

1. Official capacity claims against all of the defendants are **GRANTED**;

2. **Individual capacity claims:**

   a. **Eighth Amendment claim of excessive force and state claim of assault and battery**, summary judgment is **DENIED** as to Defendants Jeffery Baldwin, Daryl Brown, Jermaine Bullard, Terry Edwards, Danny Fountain, Demetrius Fleeton, Teddy Jones, Aaron Lewis, Cordaro Melton, Greggory Patterson, Timothy Robinson, Clifton Sanders, Samuel Snelson, Corbin Tunstall, Cynthia Stewart, David Dennis and Dominic Whitley, and **GRANTED** as to all other Defendants;

   b. **Eighth Amendment failure to protect claim**, summary judgment is **DENIED** as to Jeffery Baldwin, Daryl Brown, Jermaine Bullard, Terry Edwards, Danny Fountain, Demetrius Fleeton, Teddy Jones, Aaron Lewis, Cordaro Melton, Greggory Patterson, Timothy Robinson, Clifton Sanders, Samuel Snelson, Corbin Tunstall, David Dennis, Dominic Whitley, Charles Arthur, Ernest Duren, Harry Finklea, Marcus Gaston, Anthony Hadley, DeJour Knight, Antonio McClain, Larry McCovery, Nathan McQuirter, Alfie Pacheco, John Pryor, Jesse Stanford, William Streeter, Steve Terry, Bradly Walker, Jesse Wilson, Cynthia Stewart and Daryl Fails**, and GRANTED** as to all other named officer defendants;

   c. **Eighth Amendment violation for denial/delay of medical care**, summary judgment is **GRANTED** in favor of all Defendants;

3. **Slander and harassment claims**, are **DISMISSED** as to all Defendants;

4. **Declaratory and/or Injunctive Relief**, is declared **DISMISSED**; and

5. **Implimentation[sic] of the procedures used,** is **DISMISSED** as to all Defendants.

It is further **ORDERED** that this case is **REFERRED BACK** to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) for consideration and disposition of the Motion for Extension of Time (Doc. 134) and additional proceedings by order or recommendation as appropriate.

**DONE** and **ORDERED** this 27th day of February, 2020.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE